UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                               :
                                         Docket #1:21-mj-03982-
UNITED STATES OF AMERICA,            : UA All Defendants

                    Plaintiff,       :

   - against -                       :

SANCHEZ, MALIK,                      : New York, New York
                                       April 14, 2021
                    Defendant.       :

------------------------------------ :  REMOTE PRESENTMENT
```

PROCEEDINGS BEFORE
THE HONORABLE JUDGE ONA T. WANG,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                        BY:  KAYLAN ELIZABETH LASKY, ESQ.
                        One St. Andrew's Plaza
                        New York, New York 10007
                        212- 637-2315

For Defendant:          FEDERAL DEFENDERS OF NEW YORK INC.
                        BY:  CLAY HUBBARD KAMINSKY, ESQ.
                        52 Duane Street - 10th Floor
                        New York, New York 10007
                        212- 417-8749

Also Present:           Pretrial Services
                        By:  Officer Courtney DeFeo

Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com
Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service

## <u>INDEX</u>

### <u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

### <u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
1                          PROCEEDINGS                    3

2              THE CLERK:  Okay, we are ready to proceed.  This

3    is the United States versus Malik Sanchez, 21-mag-3982,

4    before the Honorable Ona T. Wang.

5              Please state your appearances for the record.

6              MS. KAYLAN E. LASKY:  Good afternoon, your Honor.

7    Kaylan Lasky for the government.

8              MR. CLAY H. KAMINSKY:  Good afternoon, Clay

9    Kaminsky, Federal Defenders, for

10             HONORABLE ONA T. WANG (THE COURT):  All right.

11   Good afternoon.  And I understand we have Pretrial Services

12   on the line, as well?

13             OFFICER COURTNEY DEFEO:  Yes. Good afternoon, your

14   Honor.  This is Courtney DeFeo on behalf of Pretrial.

15             THE COURT:  All right, and Mr. Sanchez, do we have

16   you on the line, as well?

17             MR. MALIK SANCHEZ (THE DEFENDANT):  Yes.

18             THE COURT:  All right.  Mr. Sanchez, are you able

19   to speak and understand English?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right, we are here for an initial

22   appearance.  We are in the midst of the COVID-19 pandemic.

23   I am conducting this proceeding pursuant to the authority

24   provided by Section 15002 of the CARES Act and the standing

25   orders issued by our chief judge pursuant to that Act.
```

```
 1                      PROCEEDINGS               4
 2   Counsel are appearing by telephone, and the defendant is
 3   also participating by telephone.  I also note that this
 4   telephone line is open to the public and the press on a
 5   listen-only basis.  The Court is making an audio recording
 6   of this proceeding, and any other recording or
 7   rebroadcasting by anyone else on this line is strictly
 8   prohibited.
 9              In order to aid the Court in making a clear audio
10   recording, all members of the public and the press are
11   directed to stay on mute and remain on mute for the
12   duration of the conference.  For participants who expect to
13   be speaking, please stay on mute until it is your turn to
14   speak.  And please say your name when you start speaking,
15   and please don't interrupt each other.  Any failure to
16   follow these ground rules may result in muting or expulsion
17   from the conference; and, in egregious cases, sanctions.
18              All right, I'm going to go down the line right now
19   for the participants, and I'm going to ask the same two
20   questions.  Number one is can you clearly hear everyone;
21   and, two, will you let me know promptly if you cannot?  And
22   I'm going to start with the government, AUSA Lasky, can you
23   clearly hear everyone, and will you let me know promptly if
24   you cannot?
25              MS. LASKY:  Yes, your Honor, on both questions.
```

```
1                          PROCEEDINGS                    5
2              THE COURT:  All right, next question is for
3    Mr. Kaminsky.  Mr. Kaminsky, can you clearly hear everyone,
4    and will you let me know promptly if you cannot?
5              MR. KAMINSKY:  Yes and yes, your Honor.
6              THE COURT:  All right, Officer DeFeo, can you
7    clearly hear everyone, and will you let me know promptly if
8    you cannot?
9              PRETRIAL OFFICER DEFEO:  Yes, your Honor.
10             THE COURT:  And then, Mr. Sanchez, can you clearly
11   hear everyone, and will you let me know promptly if you
12   cannot?
13             THE DEFENDANT:  Yes.
14             THE COURT:  All right.  I understand that
15   Mr. Sanchez is currently with the marshals in the
16   cellblock, is that correct?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  All right, Mr. Kaminsky, have you and
19   Mr. Sanchez had an opportunity to consult in advance of
20   this proceeding; and if so, when and how did those
21   confrontations take place?
22             MR. KAMINSKY:  Yes, we have, your Honor.  Pretrial
23   Services was able to give me the direct phone number to the
24   room that he was in, and I spoke with him several times.
25             THE COURT:  All right, Mr. Sanchez, you have a
```

```
 1                         PROCEEDINGS                  6

 2   right to an attorney for all court proceedings, including

 3   this one, and during all questioning by the authorities.

 4   You have a right to hire your own attorney, but if you

 5   cannot afford one, I will appoint one to represent you at

 6   the government's expense.

 7           Mr. Kaminsky has provided the Court with a

 8   Financial Affidavit for the purposes of the Court

 9   appointing you as counsel.  Mr. Kaminsky, was this form

10   prepared in consultation with Mr. Sanchez in advance of

11   this proceeding?

12           MR. KAMINSKY:  That's correct, your Honor.  He

13   gave me the information, we went over it, and then he

14   authorized me to sign on his behalf.

15           THE COURT:  All right, Mr. Sanchez, I'm going to

16   just briefly summarize the information on the Financial

17   Affidavit, after which I'm going to ask you if he

18   information is complete, whether you have any -- and

19   accurate; and then if you say that it is, I'm going to

20   place you under oath to swear to the truth of the

21   information.  Okay?

22           THE DEFENDANT:  Yes.

23           THE COURT:  All right, so now I'm going to

24   summarize it.  Under employment, it says that you earn

25   around $200 a month, self-employed for DoorDash; you're not
```

1                           PROCEEDINGS                    7

2    married; and you have just received on the order of $50 to

3    $100 in internet donations.  And that is your only other

4    income.  You have less than $1,000 on hand in any savings

5    or checking accounts and no other property of value. In

6    terms of obligations and debts, you are single with no

7    dependents; have monthly costs of around $250, with your

8    family supporting you for the balance of anything else.

9              Mr. Sanchez, before I ask you to swear to it, is

10   the information I have just recited and summarized about

11   your financial condition accurate?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And do you have any additional sources

14   of income that I did not summarize?

15             THE DEFENDANT:  No.

16             THE COURT:  All right, I'm now going to place you

17   under oath to affirm the truth of the information set forth

18   on your Financial Affidavit.  Do you swear or affirm that

19   the information contained in your Financial Affidavit as I

20   have just summarized is true and correct?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right, I find that the defendant

23   qualifies for the appointment of counsel and appoint

24   Mr. Kaminsky to represent him.  Just a moment while I sign

25   the form, as well.

```
 1                          PROCEEDINGS              8

 2              All right, we're next going to go to the consent

 3     to proceed by phone.  Under normal circumstances, everyone

 4     participating in this proceeding would be physically

 5     present with me in my courtroom.  But, to ensure the safety

 6     of everyone and avoid the spread of COVID-19, we are

 7     conducting this proceeding by telephone.  And I want to

 8     make sure that the defendant agrees to proceed in this way.

 9              Mr. Sanchez, have you had an opportunity to

10     discuss with your attorney the issue of participating today

11     by telephone?

12              THE DEFENDANT:  Yes.

13              THE COURT:  And do you agree to participate in

14     this proceeding by telephone?

15              THE DEFENDANT:  Yes.

16              THE COURT:  All right.  I have a form that reads,

17     "Defendant Malik Sanchez hereby voluntarily consents to

18     participate in the following proceeding via

19     teleconferencing."  It has written in "prefer video," and

20     the boxes Initial Appearance before A Judicial Officer and

21     Bail and Detention Hearing are checked.  In light of the

22     current circumstances, I find that it is impracticable and

23     imprudent to obtain physical signatures that are required

24     for certain documents related to this proceeding.

25     Accordingly, and pursuant to the CARES Act and the standing
```

```
 1                         PROCEEDINGS                    9
 2   order of this Court and 10468, any such signatures may be
 3   obtained and executed electronically.  You may consent to
 4   have the forum or your counsel sign the form on your
 5   behalf.  It appears that Mr. Kaminsky has signed on your
 6   behalf.  Did you consent to having your counsel sign the
 7   document on your behalf?
 8               THE DEFENDANT:  Elaboration, please?
 9               THE COURT:  Do you agree, Mr. Sanchez, that
10   Mr. Kaminsky can sign the consent to proceed by telephone
11   for you?
12               THE DEFENDANT:  Yes.
13               THE COURT:  Mr. Kaminsky, do you also consent to
14   this proceeding going forward by teleconference?
15               MR. KAMINSKY:  Yes, your Honor.
16               THE COURT:  All right, based on the information
17   provided to the Court and the Court's own knowledge about
18   the Court's current technical capabilities, I find that
19   video conferencing is not reasonably available for this
20   proceeding and that telephonic conferencing is an
21   acceptable way to proceed and has been authorized by the
22   CARES Act.  I also find that the defendant has knowingly
23   and voluntarily agreed to participate in this conference by
24   telephone.
25               All right, and now I am signing the consent form
```

```
1                        PROCEEDINGS              10
2  on behalf of the Court.  Just a moment.  All right,
3  Ms. Lasky, can I have the date and time of arrest, please?
4           MS. LASKY:  Yes, your Honor.  This morning around
5  six a.m.
6           THE COURT:  All right, I am Judge Wang.
7  Mr. Sanchez, you are here because you are charged with
8  certain crimes by a Complaint supported by an affidavit.
9  Do you have a copy of the Complaint, or was it read to you
10 earlier today?
11          THE DEFENDANT:  Yes.
12          THE COURT:  Yes, you have a copy of the Complaint;
13 or, yes, it was read to you earlier today?
14          THE DEFENDANT:  No, I have a copy of the
15 Complaint.
16          THE COURT:  All right, thank you.  The purpose of
17 today's proceeding is to advise you of certain rights that
18 you have, inform you of the charges against you, consider
19 whether counsel should be appointed for you, or appoint
20 counsel for you, which I've already done, and decide under
21 what conditions, if any, you shall be released pending
22 trial.
23          I am now going to explain certain constitutional
24 rights that you have.  You have the right to remain silent.
25 You're not required to make any statements.  Even if you
```

```
 1                        PROCEEDINGS                  11
 2   have already made statements to the authorities, you do not
 3   need to make any further statements.  Any statements that
 4   you do make can be used against you.
 5           All right, you have the right to be released,
 6   Mr. Sanchez, either conditionally or unconditionally,
 7   unless -- pending trial, unless I find that there are no
 8   conditions that would reasonably assure your presence at
 9   future court appearances and the safety of the community.
10           If you are not a United States citizen, you have
11   the right to request that a government attorney or a law
12   enforcement official notify a consular officer from your
13   country of origin that you've been arrested.  In some
14   cases, a treaty or other agreement may require the United
15   States government to give that notice whether you request
16   it or not.
17           You have the right to be represented by an
18   attorney during all court proceedings, including this one,
19   and during all questioning by the authorities.  You have a
20   right to hire your own attorney; and if you cannot afford
21   an attorney, I will appoint -- as I have found -- I have
22   appointed Mr. Kaminsky to represent you.
23           All right, Mr. Sanchez, do you understand your
24   rights as I've just explained them?
25                   THE DEFENDANT:  Yes.
```

```
1                          PROCEEDINGS                  12
2               THE COURT:  All right, I have before me a
3    Complaint containing the charges against you in this case.
4    And they are Count One, false information and hoaxes --
5    just one count of false information and hoaxes.
6               Counsel, have you received a copy of the
7    Complaint, and have you reviewed it with your client?
8               MR. KAMINSKY:  Yes, your Honor.
9               THE COURT:  Mr. Sanchez, do you understand the
10   charges against you?
11              THE DEFENDANT:  Yes.
12              THE COURT:  And, Mr. Kaminsky, does your client
13   waive a public reading of the Complaint?
14              MR. KAMINSKY:  Yes, we do.
15              THE COURT:  All right, Mr. Sanchez, you have the
16   right to a Preliminary Hearing where the government will
17   have the burden of showing that there is probable cause to
18   believe that the crime for which you are being charged has
19   been committed and that you are the person who committed
20   it.  At the hearing you or your counsel would be entitled
21   to cross-examine any witnesses and introduce evidence.
22   However, a Preliminary Hearing will not be held if you are
23   indicted by a grand jury before the date of the Preliminary
24   Hearing.  I will set the Preliminary Hearing date at the
25   conclusion of these proceedings.
```

```
 1                       PROCEEDINGS              13
 2              I'll hear next from the government as to bail,
 3    detention or release.  Is there any agreement, or will
 4    there be an argument?
 5              MS. LASKY:  No, your Honor -- this is Kaylan Lasky
 6    for the government -- there will be an argument.
 7              THE COURT:  All right, and this is not a
 8    presumption case, is that right?
 9              MS. LASKY:  Correct, your Honor, it is not.
10              THE COURT:  All right, so government, you bear the
11    burden.  Why don't you talk to me a little bit about
12    satisfying the burden?
13              MS. LASKY:  Thank you, your Honor.  The
14    government's position is that the defendant is too
15    dangerous to release into the community and also poses a
16    risk of nonappearance.  The bomb hoax threat charge against
17    the defendant is, of course, very serious in and of itself.
18    And defendant's actions, as evidenced by his own videos
19    which he has posted to social media accounts, show he's
20    truly a menace to the community.  The government is aware
21    of videos of the defendant Macing approximately five people
22    in the last six months; and despite repeated law
23    enforcement intervention, he has remained entirely
24    undeterred.
25              The danger here is compounded by the fact that the
```

1                         PROCEEDINGS                    14

2    defendant self-identifies as an Incel.  I won't belabor

3    this, which appears in the Complaint, but Incels are

4    connected with violent attacks in the last few years.  And

5    in the defendant's videos he makes repeated chilling

6    statements in line with this ideology, including glorifying

7    Elliot Rodger, the unofficial founder of Incel, who

8    murdered six individuals and injured 14 others in 2014 in

9    California. Additionally, law enforcement today conducted a

10   search of the defendant's premises and found several items

11   that were of concern, including five magazines that fit a

12   Glock firearm in the defendant's apartment.

13           So a little bit on the facts here. The defendant

14   is charged with making a bomb hoax threat on February 13th

15   in Manhattan in an outdoor seating area of a restaurant in

16   the Flat Iron neighborhood.  The defendant is an IRL or In

17   Real Life streamer is how he identifies, and he appears to

18   have videotaped this conduct and posted it onto social

19   media.  To summarize, the defendant can be seen in the

20   video in the middle of the afternoon walking up to people

21   who were sitting down inside a seating area.  He then

22   conveyed the bomb hoax threat, which this is just an

23   excerpt, but he stated in part, "Bomb detonation in two and

24   two minutes.  I take you with me, and I'll kill all you.

25   I'll kill all you right now, and I kill all you for Allah.

```
 1                      PROCEEDINGS              15
 2    I'm going to do it."  After people leave the area, some of
 3    them frantically, the defendant can be heard kind of
 4    laughing and exclaiming, "Yo, all them scattered," and in
 5    addition, saying it was, quote, "five star."
 6              The charged conduct, this February 13 bomb hoax
 7    that I just described in part is, of course, incredibly
 8    serious.  It's clear in the video that the victims were
 9    terrified and that the defendant's actions created chaos
10    for them.  In recounting the incident, one of the victims
11    said she was, quote, "paralyzed with fear."  Significantly,
12    the bomb hoax threat is part of a larger pattern with
13    Sanchez of dangerous and escalating conduct.  In the last
14    six months the defendant has been arrested and charged with
15    approximately three different -- or Macing approximately
16    three different individuals during livestream.  When he was
17    arrested in connection with one of those incidents, he had
18    both Mace and a Taser on him.  He's also been arrested,
19    again within the last approximately six months, of climbing
20    and livestreaming the Queensboro Bridge.  This was in
21    October 2020.  The criminal Complaint in that case
22    describes that he allegedly sprayed Mace down at
23    approximately five people down below.  That case has been
24    resolved; he pled to disorderly conduct.
25              As described in the Pretrial Report, as well,
```

1                       PROCEEDINGS                    16

2     there's a 2018 grand larceny conviction.  The government's

3     also aware of videos of approximately two additional Macing

4     incidents of two different males that appear to be

5     uncharged.  And, again, the defendant has appeared to

6     remain undeterred and continues to menace the community.

7     The government understands that he was streaming as

8     recently as yesterday with what appeared to be a canister

9     of pepper spray on him.

10          All of this is particularly concerning given the

11    Incel rhetoric that the defendant can be heard spouting in

12    the videos, repeatedly glorifying violence and speaking

13    about how victims deserve to be slaughtered, in the case of

14    Elliot Rodger, for example.

15          And again, today law enforcement found items of

16    concern in his house.  This included five magazines that

17    fit to a Glock.  And just to be clear, the government did

18    not identify any Glocks in his house, but we did find five

19    magazines, as well as an airsoft gun, a paintball gun, and

20    multiple canisters of Mace, as well as notes describing

21    what appeared to be ideas for, quote, "content," which

22    included, for example, diving and screaming to stop traffic

23    and faking a hit-and-run.

24          Additionally, your Honor, the government contends

25    that, supported by a preponderance of the evidence, there

1                             PROCEEDINGS              17

2   is a risk of nonappearance.  This is in large part because

3   the defendant appears to have flouted the law time and time

4   again; and, accordingly, there is a risk of nonappearance

5   for future court dates in this case.  The government also

6   understands that the defendant did not appear in state

7   court last week for two pending state court cases involving

8   two of these Macing incidents.

9           The government's evidence is strong here, as

10  described previously, and much of this conduct is captured

11  on video, including the charged conduct relating to the

12  bomb hoax incident.  The defendant's voice can clearly be

13  heard, and he can be seen earlier in the video, not during

14  the part relating to the bomb threat itself.  The defendant

15  is facing serious charges, finally, and these appear to be

16  the most serious that he has ever faced, which, again,

17  provides a strong incentive to flee.  For these reasons,

18  the government seeks detention.

19          THE COURT:  All right, Mr. Kaminsky, do you have

20  anything to say to that?

21          MR. KAMINSKY:  Yes, your Honor.

22          THE COURT:  Go ahead.

23          MR. KAMINSKY:  Thank you very much.  Conditions

24  can be set.  Let me first address the risk of

25  nonappearance, which the government bears the burden there

```
1                        PROCEEDINGS              18
```

2 by a preponderance.  But they can't bear that, your Honor,

3 and that's because Mr. Sanchez is a lifelong New Yorker.

4 He lives with his mother, his uncle and his grandmother in

5 the same apartment that he's lived for as long as he can

6 remember, maybe the apartment that he came home to when he

7 was born.  He's a lifelong member of the community.  And

8 one of the conditions that Pretrial's recommending and that

9 the mother has agreed to is that she be a third-party

10 custodian.  We have spoken with the mother, we have spoken

11 with the grandmother, we have spoken with the uncle.

12 They're all willing to sign.  And he's just going to show

13 up for court.

14          Now, the government says that he's flouted court

15 orders and that he didn't show up in state court last week.

16 I don't know where they're getting that information.  What

17 I have is the Pretrial Services Report, which says that his

18 next appearance in the state is on April 19th.  It shows no

19 bench warrants ever.  It shows -- the government referenced

20 that he had a 2018 grand larceny conviction; what the

21 government failed to reference is that he was 16 at the

22 time and was not actually convicted.  He was adjudicated

23 juvenile delinquent, and he was placed on probation for six

24 months, and he successfully completed probation.  So we

25 have a history of complying with court orders.

```
1                       PROCEEDINGS                 19
```

2                Now, with respect to dangerousness to the
3    community, the government bears the burden on dangerousness
4    by clear and convincing evidence, and there's not clear and
5    convincing evidence in this case that conditions can't be
6    set.  The question is not whether he has misbehaved in the
7    past; the question is whether the Court can set conditions
8    which will adequately safeguard the community or whether
9    the government has proven by clear and convincing evidence
10   that no such conditions can be set.

11               Now, here -- let me start with the fact that
12   Mr. Sanchez is 19 years old.  I wanted to do this
13   proceeding by video so that you could see him, your Honor.
14   He's young.  He's extremely young.  He is 19, and he lives
15   in his mother's home with his grandmother and his uncle,
16   and they have suasion over him.  He has also, not since he
17   successfully completed probation, he has not been under
18   court supervision.  And he will be under court supervision
19   with Pretrial Services.

20               I've watched these videos.  I spent some time
21   today watching not all of them but watching the video in
22   question for this charge and also some of the other videos.
23   And, you know, they're more obnoxious than anything.  They
24   read as a young person, an immature young person thinking
25   that this is funny, and he's being egged on -- you can see

```
 1                          PROCEEDINGS              20
 2   the comments scrolling -- and he's being egged on by these
 3   people across the internet who are trying to get him to do
 4   things and donating money so that he does them.  And, you
 5   know, they're offensive, but they are -- he thinks they're
 6   playing.  And he's 19.  And, you know, in some of these
 7   instances where the government is alleging that he's Maced
 8   people, you know, if you watch the video, you know, what's
 9   happening in a lot of the instances is that people are
10   coming up and actually starting an altercation with him, a
11   physical altercation.  Now, he might have said something
12   obnoxious before that, but the physical altercation is
13   started by someone else.
14             So, look, Pretrial Services recommends that he be
15   released on a bond -- I recommend $10,000 -- to be cosigned
16   by two financially responsible people; and the defendant's
17   mother as a third-party custodian, which I think makes
18   sense; and they recommend a lot of other conditions,
19   including the surrender of travel documents.  His mother
20   has his passport and can get it there today, I think.
21   Travel restricted to the Southern and Eastern Districts of
22   New York, obtain and maintain employment, mental health
23   evaluation and treatment as directed, not to possess a
24   firearm, weapon or destructive device -- and let's include
25   Mace and pepper spray in that.  We can also include a
```

```
 1                          PROCEEDINGS               21
 2   paintball gun and an airsoft gun.  I don't think any of
 3   these are actually weapons, but to the extent the
 4   government is concerned about them, let's include them.
 5   Abide by temporary Orders of Protection.  And the other
 6   thing is, you know, I don't think this is necessary, but if
 7   your Honor wanted to order that he not engage in any
 8   livestreaming while he's on bail, you know, that is
 9   something we'd consent to, if your Honor thinks it's
10   necessary.  And it would certainly keep him from being
11   egged on by these people on the internet.
12           So what I would say, your Honor, is it's not a
13   presumption case; the government bears the burden; we have
14   a 19-year-old young person living his mother's home; and
15   conditions can be set that will adequately assure the
16   safety of the community and his appearance in court.
17           THE COURT:  All right, I had a couple of questions
18   for the government, and then I'll also let the government
19   respond to what defense counsel has stated.
20           I guess I wanted -- if the government has any
21   information about the Orders of Protection that were
22   mentioned by Mr. Kaminsky; and then also, you know, whether
23   airsoft guns and paintball guns are -- you know, your
24   position on how they can be used and dangerousness in the
25   community.  And then I know that there is quite a bit on
```

```
 1                          PROCEEDINGS           22
 2   the Incel movement in the Complaint, but if any of the
 3   thoughts or the approaches of the Incel movement are
 4   considered or have been treated as domestic terrorism acts,
 5   and also whether those acts specifically target, as I
 6   understand it, women or anything like that.  I mean, is --
 7   and whether the -- and after Ms. Lasky has had a chance to
 8   speak, Mr. Kaminsky, one question for me is -- for you is
 9   whether you think or how a prohibition on livestreaming,
10   even if it were complied with, is effective to stop the
11   defendant from Macing people and spraying them with pepper
12   spray and otherwise threatening them.  All right?  I will
13   put myself on mute at this point.
14           MS. LASKY:  Thank you, your Honor.  This is Kaylan
15   Lasky for the government.  So a couple of points to respond
16   to here, your Honor.  So, first of all, with respect to the
17   Orders of Protection, if I'm understanding the question
18   correctly, the government is aware of several Orders of
19   Protection that have been issued in state court as relates
20   to Macing victims from prior incidents that Mr. Sanchez has
21   been involved in.
22           With respect, your Honor, to airsoft guns and
23   paintball guns, I would not contend that they are in fact
24   firearms; however, there's always a risk of, especially in
25   close proximity, of weapons such as those causing injury,
```

1

2  including eye injury; and also, you know, escalating a

3  situation where it shouldn't be escalated, for example,

4  which could lead to harm to others and lead, as well, to

5  harm to the individual who carries those items.

6          I would also note for the Court again that on the

7  defendant's premises were found approximately five Glock

8  magazines, and those were for actual guns, not for airsoft

9  or for paintball guns.

10         Additionally, your Honor, I would respond to a

11 couple of the points that Mr. Kaminsky raised.  With

12 respect to his proposal regarding the defendant being

13 returned essentially to the home in which he's been

14 staying, it's the government's position that that would be

15 essentially returning him to where he was when he committed

16 crimes repeatedly in the last six months.

17         With respect to -- oh, I realize I neglected to

18 respond to the Court's question with respect to the

19 domestic terrorism act.  In general, I would say that this

20 is one of the -- Incels are one of the domestic extremist

21 groups that, you know, law enforcement is currently focused

22 on.  And it is, you know, as part of public reports, it is

23 something that is a current focus of law enforcement.

24         With respect to the question about bench warrants

25 raised by Mr. Kaminsky, I in no way meant to imply that a

1                            PROCEEDINGS            24

2    bench warrant had been issued.  My understanding in the

3    status of state courts is that, particularly with virtual

4    appearances, bench warrants aren't being issued unless

5    there have been repeated failures to appear.  And so, you

6    know -- but this, I understand, was a virtual appearance

7    scheduled for last week at which the defendant did not

8    appear.

9              And the point is taken with respect to the

10   defendant's age; however, the government strongly feels

11   that the defendant still poses a danger and particularly in

12   light of what appears to be an escalating pattern of

13   criminal conduct.  The defendant, it's true he is not under

14   parole supervision at the moment, but the defendant with

15   respect to one of the Macing incidents received an

16   adjournment in contemplation of dismissal which

17   contemplates the defendant staying arrest free for

18   approximately six months, which certainly has not been the

19   case for this defendant.

20             And, lastly, the government would point out for

21   the Court that although it certainly may be the case that

22   some of this conduct appeared funny or outrageous to the

23   defendant, it certainly did not seem, for all intents and

24   purposes, as funny to the people who he has hurt and who he

25   has scared in the last approximately six months, your

1
2     Honor.
3              THE COURT:  Thank you, Ms. Lasky.
4              Mr. Kaminsky, anything else to add?
5              MR. KAMINSKY:  Yes, your Honor, thank you.  And
6     that last point that Ms. Lasky made just goes to his
7     immaturity.  Right?  I mean, his brain isn't even fully
8     formed and won't be for another seven years.
9              So with respect to the ACD point, you know, the
10    stayed adjournment in contemplation of a dismissal, what I
11    would say about that is no supervision comes with that.
12    And Pretrial Services actually supervises.  And, you know,
13    Pretrial Services has recommended bail.  They think they
14    can supervise in this case, and they're very capable
15    supervisors.
16             With respect to the Incel movement, it's not
17    really a movement.  It's not really a -- well, maybe it's
18    as movement.  It's not a group.  You know, it can't be a
19    terrorist group because it's not a group with any
20    structure.  What it is it's an internet subculture with
21    certain memes and references and ways of sort of talking
22    and communicating and ideas.  But it's not like a terrorist
23    group that's trying to, you know, advance a cause through
24    sort of a chain of command.  And that's exactly why -- to
25    get to your Honor's question -- that's exactly why a

1

2  prohibition on livestreaming might be extremely effective.

3  From my view of these videos, Mr. Sanchez is seeking

4  attention. You have to understand these videos can be hours

5  in length.  And they're sort of set up -- you know, it's

6  like -- and people are watching them and commenting on them

7  and egging him on.  And so, you know, to the extent one can

8  get in his 19-year-old head and wonder why he's doing some

9  of the things he's doing, I think it's because he's finding

10  approval for it on the internet.  And so if we can cut that

11  feedback loop, I think that that would go a long way to

12  getting this behavior under control.  So I think we should

13  see him for what he is; he's an attention-seeking 19-year-

14  old, and he can be helped by Pretrial.

15              MS. LASKY:  Your Honor, if I may?  This is Kaylan

16  Lasky for the government.  I just wanted to pull up one

17  note with respect to previous comments made by the

18  defendant in one of his videos.  One moment, please.  So

19  this was from a video -- and I quote just in part and in

20  rough form -- but from approximately -- posted, I believe

21  around April -- that's not right -- this was shortly, I

22  understand, after his most recent arrest on March 20th.  He

23  said, "I am an Incel.  I'm an Incel, but I guess streaming

24  kind of helps me therapeutically in a sense.  It keeps me

25  out of, like, my Incel mindset.  So, you know, it allows me

```
 1                    PROCEEDINGS               27
 2  to have fun, nevertheless, in a way, I guess."  I read this
 3  as someone who isn't just, you know, possibly doing it for
 4  the camera but is actually saying this is a strongly-held
 5  belief and that in fact the things that he streams allows
 6  him to think less about being an Incel, your Honor.
 7            MR. KAMINSKY:  Your Honor, this is Clay Kaminsky.
 8  That is cherry-picked. There are just all kinds of stunts
 9  for the camera. And I'm not going to say that, you know,
10  every single part of every single video supports my thesis,
11  but the general gestalt supports my thesis.
12            THE COURT:  All right, anything else, Ms. Lasky or
13  Mr. Kaminsky?
14            MS. LASKY:  Not from the government.  Thank you,
15  your Honor.
16            MR. KAMINSKY:  No, thank you, your Honor.
17            THE COURT:  All right, I'm going to take a brief
18  break.  I ask everyone who wants to stay on the line, I
19  direct you to stay on mute.
20            Mr. Kaminsky, would you, while I am taking a brief
21  break, would you like to be placed in a private breakout
22  session with your client?
23            MR. KAMINSKY:  Sure, your Honor.  Thank you.
24            THE COURT:  Okay, and I am going to take a brief
25  break.  Anybody else who is on the line, including any
```

```
 1                         PROCEEDINGS                28
 2  press or public, members of the public, if you want to stay
 3  on, I'll be a few minutes.  Keep yourself on mute.  It is a
 4  public line, and this main room will still be recorded.
 5  Okay?
 6           The first -- and I'm going to next bring -- I'm
 7  going to speak with Officer DeFeo briefly also in a private
 8  room.  All right?  So everyone just stay on.  We will
 9  resume when you hear the beeps in the main room, at which
10  point I'm bringing everybody back into the main room.
11           (Brief pause - 39:36 to 1:10:35)
12           THE COURT:  All right, we are back on the record.
13  This is Judge Wang.  I wanted to confirm that the
14  participants are still on the line. AUSA Lasky, are you
15  still here?
16           MS. LASKY:  Yes, your Honor.
17           THE COURT:  I need to move Mr. Kaminsky and
18  Mr. Sanchez in.  Hold on a minute.
19           All right.  We are back on the record.  This is
20  Judge Wang.  I wanted to confirm that the participants on
21  this call are still present and can hear.  AUSA Lasky, are
22  you present?
23           MS. LASKY:  Yes, your Honor.
24           THE COURT:  All right, Mr. Kaminsky, I have
25  successfully moved you back out of your breakout room and
```

```
1                         PROCEEDINGS              29

2    back into the main room?

3              MR. KAMINSKY:  Yes, you did, your Honor.

4              THE COURT:  All right, and Mr. Sanchez, you are

5    still here, and you can hear me?

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right, and Officer DeFeo, you're

8    still here, as well?

9              PRETRIAL OFFICER DEFEO:  Yes, your Honor.

10             THE COURT:  All right, Mr. Sanchez, I am required

11   under the law to release you, either with or without

12   conditions imposed, unless I determine that there are no

13   conditions that will reasonably assure your appearance in

14   court as required and the safety of the community.  In

15   making a bail determination, I am required to consider the

16   following factors.  I will discuss each of them briefly as

17   they relate to your case as I go through them.

18             The nature and circumstances of the offense

19   charged.  While this is not an enumerated crime under

20   18 U.S.C. 2332(b)(G)(5)(B), the acts, videos and statements

21   taken together with the professed support for the Incel

22   movement and particularly the acts alleged in paragraph

23   5(b) of the Complaint suggest a continued danger to the

24   community.  In paragraph 5(b) there is an allegation that

25   the defendant harasses women who are walking down the
```

2  street and then later says on the video -- and I'm

3  excerpting a little bit -- "Elliot Rodgers should have

4  blown their brains out a long time ago.  They deserve to be

5  slaughtered and hit by a f---ing truck."  There are also

6  repeated instances, as proffered by the government and as

7  indicated in the Pretrial Report where he is spraying

8  pepper spray on people and being arrested for such conduct

9  doesn't seem to have stopped it.  Indeed, as the government

10  has proffered, such conduct may in fact be escalating.

11          The weight of the evidence is strong in this case,

12  and some of the physical evidence found in connection with

13  the execution of the search warrant this morning weigh

14  further toward a danger to the community and to himself.

15  And those are the magazines that were found for a Glock

16  pistol.  Even though there was no Glock found, that is

17  concerning.  Also, although the airsoft gun and paintball

18  gun are not firearms per se, we have all seen enough in the

19  press of young men of color being shot while in possession

20  of things that were perceived or thought to be weapons.

21  Even the Mace and the pepper spray, as the government has

22  indicated, are more likely to escalate rather than

23  deescalate and likely to cause injury in any incidents or

24  interactions with the public and with law enforcement.

25          Your youth, Mr. Sanchez, weights both ways.  While

```
1                    PROCEEDINGS                31
```

2  the more serious larceny charge or grand larceny charge did

3  occur when you were only 16, that appears to only have been

4  three years ago.  And in the three years since, there have

5  been a number of arrests that seem to be relating more to

6  Mr. Sanchez's professed support and creating of videos

7  supporting the Incel movement.

8           And I also wanted to address the fact that the

9  government has also satisfied its lighter burden of a risk

10 of nonappearance.  I see four existing Orders of Protection

11 which arose out of recent incidents where members of the

12 public were sprayed with pepper spray or Mace.  They

13 apparently did not help in encouraging Mr. Sanchez to

14 refrain from further attacks or assaults on others.  These

15 repeated incidents are also, of course, probative as to

16 continued danger.

17          Accordingly, and for the reasons I just stated, I

18 find that the government has met its burdens of

19 establishing that there are no conditions that I can impose

20 that will reasonably assure Mr. Sanchez's appearance and

21 the safety of the community.  I make this decision based on

22 all of the information that has been presented to me,

23 including the Pretrial Services Report and the arguments

24 and information provided by counsel, even if I have not

25 specifically referred to it at this moment; and considering

```
 1                          PROCEEDINGS             32
 2   all of the factors set forth in 18 U.S.C. 3142(g).
 3              Accordingly, Mr. Sanchez is remanded to the
 4   custody of the attorney general for confinement in a
 5   corrections facility separate, to the extent practicable,
 6   from persons awaiting or serving sentences or being held in
 7   custody pending appeal.
 8              Mr. Sanchez must be afforded a reasonable
 9   opportunity for private consultation with defense counsel.
10   On order of a Court of the United States or on request of
11   an attorney for the government, the person in charge of the
12   corrections facility must deliver the defendant to a United
13   States marshal for the purpose of an appearance in
14   connection with a court proceeding.
15              Please let me know, Mr. Kaminsky, if you need a
16   medical needs order.  Please submit one with the particular
17   needs filled out and sent to chambers, and I will make sure
18   that that is entered.
19              And, finally, if you don't agree with my decision,
20   you have a right to appeal it.
21              All right, what day shall I set for the
22   Preliminary Hearing?
23              MR. KAMINSKY:  Fourteen days, your Honor.
24              THE COURT:  All right, that will be April 28th for
25   the Preliminary Hearing.
```

```
 1                        PROCEEDINGS                    33
 2              The government is ordered to comply with its
 3    disclosure obligations under Brady v. Maryland and its
 4    progeny.  The possible consequences of this violation will
 5    be described in a later written order if a formal charge is
 6    brought and may include dismissal of the charges and
 7    sanctioning of any responsible lawyer for the government.
 8              All right, anything else in this matter at this
 9    time from the government, and then I ask the same question
10    from the defense?
11              MS. LASKY:  Nothing further from the government.
12    Thank you, your Honor.
13              MR. KAMINSKY:  Your Honor, I think I would be
14    remiss if I didn't tell you something that I learned from
15    Mr. Sanchez during the breakout session.  I don't know
16    whether it will affect your decision.  But in many of these
17    instances of sort of seeming to harass people on the
18    street, the people are actually known to Mr. Sanchez, and
19    it's part of scripted content.  I don't know whether that
20    affects your decision, but since it might, I feel like I
21    should bring it up because I do think conditions can be
22    set.  All of the items that were found, you know, he could
23    be -- they were perfectly lawful.  There's no allegation
24    that he wasn't able to have them.  And he could be
25    prevented from having them while on pretrial release.  And
```

```
 1                          PROCEEDINGS               34
```

 2   the Orders of Protection, there's no allegation that he's

 3   violated them.  And it doesn't really speak to

 4   nonappearance at all.  So I suppose I will take this

 5   opportunity to say that, your Honor.

 6            THE COURT:  All right.  I mean, everything other

 7   than the potential that some of these videos are scripted

 8   is not -- sounds like re-argument to me; and if that's the

 9   case and you intend to appeal, then you should make that

10   argument to the Part One judge.

11            As far as whether potentially some of the alleged

12   victims are known to Mr. Sanchez and that this is scripted

13   content, there are at least four Orders of Protection that

14   indicate that there are at least four individuals who were

15   not part of the scripted content.  And so that ultimately

16   doesn't change my decision.  Okay?

17            All right, anything further?

18            MR. KAMINSKY:  No, your Honor.

19            THE COURT:  Anything further from the government?

20            MS. LASKY:  No, your Honor.

21            THE COURT:  All right.  Thank you very much.  We

22   are adjourned.

23                 (Whereupon, the matter is adjourned.)

24

25

35

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of USA v. Sanchez,

Docket #21-mj-03982-UA All Defendants, was prepared using

digital transcription software and is a true and accurate

record of the proceedings.

Signature_____

                Carole Ludwig

Date:    April 19, 2021